```
             UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE
```

Sandra Lindstrom

    v.                                          Civil No. 16-cv-109-JD
                                                      Opinion No. 2017 DNH 019

Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration

O R D E R

    Sandra Lindstrom seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. Lindstrom contends that the Administrative Law Judge ("ALJ") erred in finding that she did not have a medically determinable severe impairment due to multiple chemical sensitivity ("MCS") before her date last insured. The Acting Commissioner moves to affirm.

Standard of Review

    In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276

F.3d 1, 9 (1st Cir. 2001).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.  § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Castillo Condo. Ass'n v. U.S. Dep't of Housing & Urban Dev., 821 F.3d 92, 97 (1st Cir. 2016) (internal quotation marks omitted).  "[S]ubstantial evidence does not mean either uncontradicted evidence or overwhelming evidence" but instead can be satisfied "even if the record arguably could justify a different conclusion."  Id. (internal quotation marks omitted).

## Background

Lindstrom applied for social security disability benefits in 2009, alleging that her disability began on October 15, 1990.[1]  After her application was denied, a hearing was held before an ALJ in December.  The ALJ issued a decision denying Lindstrom's claim on February 4, 2011.  Lindstrom appealed the unfavorable decision, and the United States District Court in the District of Vermont reversed and remanded for further proceedings.[2]

---

[1] At that time and through most of the prior proceedings, Lindstrom was known as Sandra Schadt.

[2] Lindstrom has since moved to New Hampshire.

On direction from the Appeals Council, a new hearing was held on October 14, 2015, before the same ALJ who held the first hearing. The ALJ issued an unfavorable decision on December 22, 2015, and Lindstrom sought judicial review of that decision.

Lindstrom was thirty years old in 1990. She has a college degree and has worked as a sales clerk, waitress, file clerk, recreational aid, maintenance worker, supervisor of a group home, and park foreman. She stopped working in 1990 when she was pregnant because she was having minor reactions to chemicals in the environment, and she was concerned about the impact of her reactions on her unborn child. After her son was born, she stayed at home to care for him. Lindstrom's last insured date was December 31, 1995.

Lindstrom was evaluated in April and June of 1982 because of allergic reactions. She provided a detailed history of her reactions to materials and environments beginning in 1979. She remembered having severe skin reactions in 1979 and 1982 but follow-up pulmonary testing was normal and a dermatologist found no reason to pursue patch tests.

Dr. John Balmes concluded that Lindstrom had developed severe allergic reactions in the past, that she did not have asthma, that she had sensitivity to substances in new clothes, and that her reactions could be due to those substances and

3

anxiety.  Lindstrom's obstetric record in 1991 notes that she was severely allergic to chemicals.

Michael Schaffer, Lindstrom's chiropractor, wrote a letter in 2009 that he had first treated Lindstrom in 1993.  Schaffer noted that Lindstrom was intensely sensitive to chemicals, including fumes from his office copy machine, new carpet, and perfumes worn by others in his office.  Lindstrom's employer from 1982 to 1990 also wrote a letter that said Lindstrom struggled with chemical allergies, which caused her to miss work and eventually to stop working.

Medical notes in 1998 mentioned Lindstrom's chemical sensitivities.  Notes from the Shepard of Hope Clinic in 2002 stated that Lindstrom had an extreme allergy to new carpet but do not indicate any treatment being provided for her allergy. Treatment notes in 2006 mentioned her many chemical sensitivities but do not indicate treatment.  Lindstrom was tested for allergies in August of 2008, which showed strong reactivity to polysorbate 60, fluride, indocine, penicillin, and sulfamethosozole, along with moderate and mild reactions to certain other substances.[3]

---

[3] The testing done in 2008 had not been approved by the Food and Drug Administration and had inconsistent results.

4

In September of 2009, Nurse Practitioner April Brumson, from the Soujourns Community Health Clinic, noted that Lindstrom had headaches because of multiple chemical sensitivities and that her sensitivities also caused anaphylaxis, compromised immunity, poor concentration, and an inability to process information. Brumsom thought the cognitive changes were more disabling than headaches, that avoiding triggers was the best treatment, and that her reactions were worsening over time. Brumsom's opinion was reviewed and approved by Dr. Gary Clay.

Dr. N. Thomas LaCava of Francis Hollistic Medical Center wrote in October of 2009 that Lindstrom had chemical sensitivities, chronic fatigue, food allergies, thyroiditis with hypothyroidism, and a history of anaphylaxis. Her treatment involved avoiding chemicals that triggered a reaction, and her prognosis was chronic, permanent, and unremittent. For that reason, Dr. LaCava thought Lindstrom would always be absent from work.

Lindstrom also obtained an opinion letter in October of 2009 from Dr. Linda Haltinner who worked at the Soujourns Clinic. Dr. Haltinner wrote that Lindstrom was being treated for symptoms of MCS, that her reactivity was extreme and interfered with her normal life activities. She recounted an

5

incident at the clinic when Lindstrom had a reaction and had to be escorted outside to allow her thinking to clear.

Nurse Practitioner Brumson provided another opinion in July of 2010 in which she wrote that Lindstrom's disability was due to environmental allergies and multiple chemical sensitivities as well as asthma caused by chemical exposure. An ideal controlled environment could best be approached in Lindstrom's home. Dr. Brumson stated that Lindstrom's limitations had existed since 1979 based on Lindstrom's reports.

Dr. Alex Bingham provided an opinion in December of 2010 that Lindstrom had been totally disabled since 1999 and had been partially disabled from 1990 to 1999. He found that Lindstrom was disabled due to MCS. He recounted Lindstrom's symptoms and her history of reactions. He thought that she could not spend time in an environment with exposure to a wide array of chemicals and could function only in a highly controlled environment at home.

At the first hearing on December 15, 2010, Lindstrom testified to a history of physical responses to environmental conditions, including cigarette smoke and pesticides, and to being chronically sick. She testified that when she became pregnant she stopped working because she was afraid of the effect of her reactions on the baby. After her son was born in

1991, her sensitivity to environmental conditions became worse and Lindstrom stayed at home to care for him.

She testified that her reactions to chemicals in the environment included migraine headaches and anaphylactic shock. She said that she had anaphylactic reactions in 1993, 2004, and 2005 but was able to treat the episodes with Benadryl except for the bee sting in 2004 when she used an Epipen. Lindstrom testified that over the years she has learned to avoid exposure that causes reactions.

Dr. Bruce J. Biller appeared by telephone at the 2010 hearing as an impartial medical expert. Dr. Biller testified that Lindstrom's medical record was not a convincing basis to prove disability. He noted that MCS had not been proven by testing but instead by a process of elimination without a complete evaluation of other causes of Lindstrom's symptoms. Dr. Biller noted that the record did not include records of anaphylaxis events or visits by Lindstrom for emergency care, which would have been in the records if those incidents had involved medical care.

Dr. Biller also questioned the validity of some of the testing. In Dr. Biller's opinion, the record did not support disability based on a diagnosis of MCS. He recommended that

7

Lindstrom undergo allergy and psychiatric testing by board-certified physicians.

In response to questioning by Lindstrom's counsel, Dr. Biller noted that the medical paper he referenced for the case was markedly skeptical of MCS as a disorder and that the AMA's Society Council on Scientific Affairs recommended that multiple chemical sensitivities not be considered a recognizable symptom. Dr. Biller also testified that Dr. Bingham's criteria for MCS would have to be reconciled with the more recent paper he had read for the case.  The ALJ denied Lindstrom's claim on February 4, 2011.

Lindstrom had allergy and neuro-psychological testing in January and February of 2011 to assess MCS.  Dr. LaCava reported in September of 2011 that Lindstrom was reactive to almost every substance that was tested.  Based on his interpretation of the testing, Dr. LaCava thought that Lindstrom's reactivity would preclude working in most if not all employment environments. Dr. Luz Ruiz interpreted the neuro-psychological testing and found that Lindstrom had mild cognitive impairment.

In September of 2013, Dr. Michael Lax provided an opinion letter based on a review of Lindstrom's medical records.  Dr. Lax diagnosed MCS based on "a typical constellation of symptoms and clinical presentation."  He thought that Lindstrom had been

8

unable to work outside her home since she stopped working in 1990.

Lindstrom sought judicial review of the ALJ's decision in the District of Vermont. That court found that the ALJ erred in determining at Step Two that Lindstrom did not have a medically determinable impairment. Specifically, the court concluded that the ALJ should have considered all of the medical opinion evidence in the record instead of relying exclusively on Dr. Biller as to whether MCS can be a medically determinable illness. The court further directed that if the medical opinions were correctly assessed on remand, the ALJ should then consider the remoteness of the alleged onset date, including the requirements of SSR 83-20 if necessary.

The second ALJ hearing was held in October of 2015. Although Dr. Biller would have been available to testify at that hearing, the ALJ and Lindstrom's counsel had no questions to ask him. Lindstrom provided witness statements about her symptoms from a former boss, her ex-husband, her sister, and her son. The ALJ denied Lindstrom's claim, and Lindstrom did not seek review by the Appeals Council.

## Discussion

In support of her appeal, Lindstrom contends that the ALJ erred in finding that MCS is not a severe medically determinable

9

impairment at Step Two and asks the court to award benefits. The Acting Commissioner moves to affirm the decision on the grounds that the ALJ properly found that Lindstrom did not have a medically determinable severe impairment before her last insured date in 1995.

In determining whether a claimant is disabled for purposes of social security benefits, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 404.1520. The claimant bears the burden through the first four steps of proving that her impairments preclude her from working.[4] Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the Acting Commissioner has the burden of showing that jobs exist which the claimant can do. Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).

A.  Step Two Analysis

At Step Two, the ALJ must determine whether the claimant has a severe medically determinable impairment or a combination of impairments that is severe and meets the duration

---

[4] The first four steps are (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether the impairment meets or equals a listed impairment; and (4) assessing the claimant's residual functional capacity and his ability to do his past relevant work. 20 C.F.R. § 404.1520(a).

requirement.[5] § 404.1520(a)(4)(ii). An impairment is medically determinable only if it "result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. That means that the impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." Id. An impairment or combination of impairments is severe if the impairment or combination "significantly limits [the claimant's] ability to do basic work activities." § 404.1520(c).

In this case, Lindstrom claims to have been disabled since 1990 by MCS. In reversing and remanding the case, the Vermont District Court directed the ALJ on remand to weigh and consider the medical opinions in the record, not to rely exclusively on the opinion of Dr. Biller, and to develop the record with missing records and with skin testing and neuropsychological assessment. The court did not consider the issue of Lindstrom's

---

[5] Lindstrom, who is represented by counsel, appears to misunderstand her burden at Step Two. The issue is not whether MCS might be a medically determinable severe impairment, as she suggests. Instead, she bears the burden of proving that she had a severe medically determinable impairment due to MCS within the relevant period.

last insured date and what evidence supported finding a medically determinable impairment before that date.

B. Last Insured Date

To be eligible for disability insurance benefits, the claimant's impairment must have been disabling while she had insured status under the social security program. 42 U.S.C. § 423(a)(1)(A) 20 C.F.R. § 404.101(a); Jack v. Comm'r, Social Security Admin., --- F. App'x ---, 2017 WL 104752, at *2 (11th Cir. Jan. 11, 2017). For that reason, a claimant must show that she was disabled, within the meaning of the Social Security Act, before her last insured date. Fischer, 831 F.3d at 32-33; Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982). At Step Two, the claimant must show that she had a severe medically determinable impairment during the relevant period, which is from the alleged onset date through her last insured date. See Duncan v. Colvin, 2016 WL 5477567, at *6 (D. Me. Sept. 28, 2016); McFall v. Colvin, 2016 WL 900641, at *4 (D.N.H. Mar. 9, 2016) (citing Moret Rivera v. Sec'y of Health & Human Servs., 1994 WL 107870, at *5 (1st Cir. Mar. 23, 1994)).

C. Analysis

The ALJ again found that Lindstrom had not "substantiated the existence of any medically determinable impairment through the use of medically acceptable clinical and laboratory

diagnostic techniques." Admin. Rec. at 933. The ALJ noted Dr. Biller's opinion of the difficulty of diagnosing MCS. He concluded that the medical records provided only reports of symptoms without "observation of symptoms by medical professions [sic] or any testing that would support the claimant's allegations." Id.

The ALJ is wrong about a lack of testing evidence in the record and again relies on Dr. Biller's original review of the record in that regard. The record now includes, in addition to the results of testing done in 2008, the results of skin testing that was done in February and March of 2011, Dr. LaCava's letter in September of 2011 that interprets the results of the 2011 testing, and the results of neuro-psychological testing. If the ALJ had concluded his examination of the record at that point, the decision would be reversed and remanded based on those errors.

The ALJ continued on, however, to consider the evidence and the opinions in the record to determine whether Lindstrom had a medically determinable severe impairment during the relevant period. The ALJ remained skeptical that MCS is a medically determinable impairment. Because the Social Security Administration apparently accepts MCS, or environmental illness, as a medically determinable impairment, the court will proceed

on that assumption.  See, e.g., Schadt v. Social Security Admin. Comm'r, 2012 WL 1910083, at *5 (D. Vt. May 25, 2012); Robbins v. Astrue, 2010 WL 3168306, at *4-*5 (D.N.H. Aug. 9, 2010).

Assuming that MCS is a medically determinable impairment, the problem presented in this case, which was not considered by the Vermont District Court, is whether Lindstrom has shown she had a severe impairment due to MCS from October of 1990 through her date last insured, December 31, 1995.  The ALJ concluded that Lindstrom did not present sufficient evidence of an impairment within the relevant period to support that finding.

1. Contemporaneous Medical Evidence

The medical evidence from the relevant period is sparse.[6]  Lindstrom testified about having allergic reactions to chemicals in the environment since 1979.  She was not diagnosed with MCS or environmental illness during the relevant period.  Although Lindstrom describes severe reactions, including anaphylactic shock, she did not seek or receive medical care during those incidents.

Lindstrom was pregnant during the relevant period.  Her obstetric records in 1991 note Lindstrom's report that she was a

---

[6] Some of Lindstrom's medical records may have been destroyed due to record retention policies.  That circumstance, however, does not relieve Lindstrom of her burden to prove a medically determinable severe impairment at Step Two.  See Duncan v. Colvin, 2016 WL 5477567, at *6 (D. Me. Sept. 28, 2016).

14

"chemically sensitive person" with severe allergic reactions to chemicals. The medical records, however, do not document any reactions by Lindstrom during her obstetric treatment and delivery to support her reports of having had reactions. See Robbins, 2010 WL 3168306, at *9, n.6 (noting that while objective testing is not available to diagnose MCS, the claimant's records must document symptoms observed during medical visits or treatment).

Dr. Michael Shaffer provided a letter in 2009 in which he described his memory of treating Lindstrom in his office in 1993. He reported that Lindstrom "was intensely sensitive to the chemicals around her," including other patients' perfume, fumes from the copy machine, and new carpeting. Dr. Shaffer stated that Lindstrom experienced headaches and difficulty breathing but did not indicate that her headaches or breathing issues were apparent to him while she was in the office or that her reported reactions required treatment in his office or elsewhere. As such, Dr. Shaffer's memory of events appears to reflect Lindstrom's subjective reporting and does not provide objective evidence of Lindstrom's symptoms.

Lindstrom also relies on statements and testimony provided by family members and a former employer about her symptoms during the relevant period. Only acceptable medical sources,

however, can provide a diagnosis of a medically determinable impairment. § 404.1513(a); Duncan, 2016 WL 5477567, at *6. Evidence from other sources, such as family members and employers, may be considered to determine the severity of a diagnosed medically determinable impairment but not to diagnose the impairment. § 404.1513(d).

Therefore, the contemporaneous medical evidence does not establish a medically determinable impairment during the relevant period through "signs, symptoms, and laboratory findings," as distinguished from Lindstrom's own complaints and statements of her symptoms. § 404.1508.

2. Retrospective Opinion Evidence

Lindstrom also provided medical opinions to establish that she had MCS during the relevant period and that MCS was a severe impairment at that time.[7] The ALJ considered the opinion evidence but gave it little weight.

With respect to the treating medical providers, the ALJ found no support for a Step Two impairment based on MCS. The ALJ explained that Nurse Practitioner Brumson's opinion was based completely on Lindstrom's reports without any medical evidence and that she is not an accepted medical source. Dr.

---

[7] As the ALJ notes, MCS was not recognized until 1999, after Lindstrom's date last insured.

Haltinner did not give an opinion that pertained to the relevant period.

Lindstrom focuses on the medical opinions that were based on a review of her records provided by Dr. LaCava, Dr. Lax, and Dr. Bingham. In each case, however, the ALJ thoroughly explained the weaknesses in their opinions, including the lack of underlying medical records of reaction incidents and treatment, inconsistencies in their analyses of the record, and the lack of validity of the tests and criteria applied. The ALJ particularly scrutinized Dr. LaCava's interpretation of skin testing results done in 2011, pointed out the conflicts and inconsistencies between Dr. LaCava's interpretations and the actual test results, and noted the lack of indication that the results pertained to Lindstrom's diagnosis during the relevant period, that is, between 1990 and 1995. The ALJ also noted that Dr. Lax's conclusion, that Lindstrom was unable to work during the relevant period, is a finding that is reserved to the commissioner. § 404.1527(d)(1).

The ALJ properly considered all of the medical evidence, including the medical opinion evidence in the record, and found that Lindstrom had not established a severe medically determinable impairment due to MCS at Step Two. The ALJ followed the required analysis, and substantial evidence

supports the ALJ's decision.  Therefore, the ALJ's decision must be affirmed.

### Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand (document no. 7) is denied.

The Acting Secretary's motion to affirm (document no. 12) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph DiClerico, Jr.
United States District Judge

January 30, 2017

cc: Craig A. Jarvis, Esq.
    Terry L. Ollila, Esq.